IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM MCCARTHA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:09CV1004-SRW |
| | ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

Plaintiff William McCartha brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income benefits under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## BACKGROUND

Plaintiff was twenty-five years old at the time of the administrative hearing and the ALJ's decision. (R. 25, 33). Evidence filed in support of his claim of disability demonstrates that plaintiff was determined to be of low average intelligence and to have attention deficit disorder as early as 1993, when he was in the second grade (R. 185). He was found to be eligible for special education services. (R. 188). On reassessment in the fifth grade, plaintiff

continued to demonstrate academic delays and required "[l]ess than half-time special education services."  (R. 176-77). In 2001, when plaintiff transferred to Alabama from Washington state, he was determined to be eligible to continue with special education services. (R. 183).  Intelligence testing in 2002 – when plaintiff was in the 11th grade – reflected that plaintiff was functioning in either the "low average" or "borderline" range. (R. 146-149, 190-91).  He was then eighteen years old and was "performing academically at a fifth grade level overall" with spelling at a third grade level.  (R. 147).  He had recently been advanced from ninth grade to eleventh grade so that he could participate in vocational rehabilitation.  (R. 148).

In an evaluation conducted by Sandra Cline, Ph.D., a clinical psychologist, on referral from Vocational Rehabilitation Services, plaintiff reported that he:

> takes out trash and "cleans up," does all the yard work and laundry, but does not shop or cook.  He watches 2-3 hours of TV a day and plays "role play" games on his Game Boy and PC.  He has 3-4 friends but does not date.  He does not listen to music on the radio or stereo.  He attends Pleasant Grove Baptist Church and Sunday School every Sunday.  His hobbies are collecting Pokemon cards. . . . He does not watch or play any sports.

(R. 148).  Plaintiff  reported difficulty concentrating.  (Id.).  Dr. Cline diagnosed plaintiff with mathematics disorder, disorder of written expression, and reading disorder on Axis I, and borderline intellectual functioning on Axis II.  Dr. Cline noted that "[i]f he is to be successful in the work place, he is going to need help with social skills."  (R. 149).

Plaintiff entered the Employee Development Program at Wiregrass Rehabilitation Center on April 15, 2002.  (R. 153).  He initially trained in the food service department.  He

2

required coaching and monitoring.  He had trouble remaining focused, completing work as instructed, and attending as scheduled.  He did not seem to take redirection well, did not socialize well with his peers or supervisors, and his personal hygiene and grooming were poor.  (R. 153).   In March 2003, Wiregrass Rehabilitation Center referred plaintiff to Dr. Shakir Meghani, a psychiatrist, for evaluation.  Plaintiff reported a history of physical abuse for several years by his stepmother in Seattle.  (R. 151).  Plaintiff's mother related problems with lack of attention, some behavioral problems and sleep problems, and a learning disability.  After conducting a mental status examination, Dr. Meghani diagnosed possible ADD, learning disability, and borderline intellectual functioning; he prescribed Concerta. (R. 152).  On follow-up a few weeks later, plaintiff's mother reported that plaintiff "follows instructions, remembers to follow instructions, and there is a definite improvement."  (R. 150).

After he began taking the medication, plaintiff began to show progress in his employee development program.  His employment counselor noted that "[h]is grooming improved as did his interaction skills.  He was able to follow instructions and perform tasks correctly.  This happened over time but he did make improvements in regards to all goals and objectives."  On July 7, 2003, plaintiff withdrew from the program because he wanted to find a job.  (R. 153-54).  Plaintiff received a certificate of attendance from high school, not a regular diploma.  (R. 33-34, 114, 154).

In 2006 and 2007, plaintiff worked for a period of six months as a stocker at the Fort Rucker commissary through Goodwill Industries.  (R. 34, 99-100, 119, 126, 135, 155).

Plaintiff testified that his problems "were interfering with [his] speed" and that he could not get his work "done fast enough to even be productive." (R. 34-35). He stated that he has been unable to find another job. (R. 35).[1]

On May 21, 2007, plaintiff protectively filed an application for supplemental security income benefits, alleging disability on the basis of borderline intellectual functioning, attention deficit disorder, and learning disabilities. (R. 106). The following month, Randy Jordan, Psy.D., performed a consultative psychological examination. (Exhibit 4F). Dr. Jordan noted, "Daily Living Skills are compromised by intellectual or psychological function. Socially, the claimant['s] functions are unusual. The claimant spends the majority of [his] day playing video games, engaging in card games, and watching TV. This is a fairly unusual young man who has evident problems with Attention Deficit Disorder and very possibly something along the line of Asperger's or even now more of a personality disorder." Dr. Jordan diagnosed attention deficit hyperactivity disorder, primarily inattentive subtype, and borderline intellectual functioning. (R. 156). Dr. Jordan further observed that plaintiff cannot manage his financial affairs, cannot function independently and needs some level of supervision. (Id.). He also noted that:

> In terms of vocation, the claimant's ability to carry out and remember instructions of a simple, one step nature is not compromised; however, treatment is not being carried out which would address ADD issues and this might make a huge difference. He certainly has the intellectual skills to do labor type tasks but does respond slowly, is more responsive to visual stimuli, and may be hampered by family pressures and low expectations.
>
> In terms of vocation, the claimant's ability to respond well to coworkers,

---

[1] It is not clear from the record whether plaintiff quit his job with Goodwill Industries or was terminated from that job. See R. 34-35, 40-41.

> supervision, and everyday work pressures is not unduly compromised.  While
> he would disagree with his sister [who accompanied him to the examination],
> he maintained good eye contact with examiner and was able to relate history
> fairly well.  He needs medication for ADD.

(R. 157).  Dr. Samuel Williams, a non-examining agency physician, prepared a psychiatric

review technique form and mental residual functional capacity assessment.  (Exhibit 5F,

R. 158-75).

On January 27, 2009, after the claim was denied at the initial administrative levels,

an ALJ conducted an administrative hearing, at which she took testimony from plaintiff, his

mother, and a vocational expert.  At the hearing, plaintiff provided the ALJ with a

questionnaire and letter dated January 22, 2009 from Dr. Nelson Handel, plaintiff's

psychiatrist.  (Exhibit 8F, R. 192-94).  The ALJ rendered a decision on February 25, 2009.

She concluded that plaintiff suffered from the severe impairments of "borderline intellectual

functioning, ADHD, and autistic disorder."  (R. 16).  She found that plaintiff's impairments,

considered in combination, did not meet or equal the severity of any of the impairments in

the "listings." She determined that plaintiff retained the residual functional capacity to:

> perform a full range of work at all exertional levels but with the following
> nonexertional limitations: claimant is able to understand and remember simple
> instructions; claimant is able to carry out short and simple instructions and
> attend and concentrate for two hour periods on simple tasks with customary
> breaks and rest during the regular workday; claimant's interaction and contact
> with the general public should be casual and non-confronting; changes in the
> workplace should be gradually and infrequently introduced; and claimant may
> need assistance in setting realistic goals and making plans.

(R. 18).  She concluded that plaintiff had no past relevant work, since his employment with

Goodwill Industries was "more than likely a sheltered work environment." (R. 22).  She

determined that, considering plaintiff's age, education, work experience and residual functional capacity, plaintiff can perform jobs which exist in significant numbers in the national economy and, thus, that he is not disabled as defined in the Social Security Act. (R. 23). On September 1, 2009, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioner's decision, arguing that the decision is due

6

to be reversed because the ALJ did not show good cause for failing to give greater weight to the opinion of plaintiff's treating psychiatrist, Dr. Handel.  The form completed by Dr. Handel provides his estimate of plaintiff's degree of impairment in eighteen functional areas, on a four-point scale ranging from "mild" to "extreme."  Dr. Handel circled "extreme" for his rating of the degree of impairment of  plaintiff's ability to understand, remember and carry out complex instructions.  He rated plaintiff's impairment as "marked" for: (1) his ability to ask simple questions or request assistance; (2) his daily activities (ability to attend meetings such as church, school, or lodge; work around the house; socialize with friends and neighbors); (3) his ability to understand, remember and carry out simple instructions and repetitive tasks; (4) his ability to maintain attention and concentration for extended periods; (5) his ability to sustain a routine without special supervision; (6) his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (7) his ability to respond appropriately to changes in the work setting.  In all other listed areas, Dr. Handel rated plaintiff's degree of impairment as "moderate."  (R. 193-94).  "If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight."  Roth v. Astrue, 249 Fed. Appx. 167, 168 (11th Cir. 2007)(unpublished opinion)(citing 20 C.F.R. § 404.1527(d)(2)).  In this case, plaintiff did not provide Dr. Handel's treatment notes to the ALJ.  As noted above, Dr. Handel expressed his

opinion about plaintiff's limitations by selecting "moderate," "marked," or "extreme" in response to eighteen listed functions.  Although the form provides a space for comments, Dr. Handel did not write anything in that section of the form.  In an accompanying letter, Dr. Handel lists plaintiff's diagnoses and treatment plan, but includes no narrative explaining his conclusions as to plaintiff's specific functional limitations.  (R. 192-95).[2]  The evidence from Dr. Handel is insufficient to demonstrate that his opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques" and the ALJ did not err, accordingly, in failing to give the opinion controlling weight.

"If the treating physician's opinion is not entitled to controlling weight, . . . 'the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.'" Id. (citing Crawford v. Commissioner, 363 F.3d 1155, 1159 (11th Cir. 2004)).  "If the ALJ finds such good cause and disregards or accords less weight to the opinion of a treating physician, he must clearly articulate his reasoning, and the failure to do so is reversible error."  Pritchett v. Commissioner, Social Security Admin, 315 Fed. Appx. 806 (11th Cir. 2009)(unpublished opinion)(citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986)).  The ALJ explained that she gave "less weight" to the opinion of Dr. Handel because: (1) he had only been treating the plaintiff for two months; (2) the limitations set forth in the questionnaire he completed are "not consistent with records

---

[2] Dr. Handel's diagnoses include autistic disorder, ADHD, impulse control disorder, post-traumatic stress disorder, and sleep disturbance, and "rule out" diagnoses of expressive language disorder, dissociative disorder, obsessive-compulsive (hoarding), and schizoid personality.  His treatment plan includes counseling, medication (Strattera) and recommended IQ and achievement testing and speech and language evaluation. (R. 192).

that span over a period of five years[;]" (3) the limitations imposed by Dr. Handel are inconsistent with plaintiff's own testimony; and (4) the limitations are inconsistent with the testimony of plaintiff's mother that plaintiff is able to understand, remember and carry out simple one and two step tasks.

Plaintiff testified that he had been seeing Dr. Handel for two months – at first he was to return every three weeks, then monthly and, by the time of the hearing, after six months. (R. 36). As the Commissioner argues, this testimony indicates that the plaintiff had seen Dr. Handel only three times during the two months of treatment. Where the ALJ does not give a treating source's opinion controlling weight, the ALJ is required to consider the length of the treating relationship and the frequency of examination in determining how much weight to give the opinion. 20 C.F.R. §§ 416.927(d)(2), (d)(2)(i)("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.").

Dr. Handel estimated that plaintiff has a "marked" degree of impairment in his ability to understand, remember and carry out even simple instructions and repetitive tasks, and that he also has a "marked" degree of restriction of his activities of daily living, including ability to attend meetings, work around the house, or socialize with friends and neighbors. However, plaintiff's mother testified that plaintiff is now able to "handle a two-step task."

9

(R. 43).  She indicated that he does not have friends visit him at home or go out with friends, but that he has "maybe two friends." (R. 40). Plaintiff testified that, although he "sometimes" must be reminded, he performs household chores including mowing the lawn, taking out the trash and vacuuming.  (R. 37).  He was able to obtain a driver's license by taking a written test, but does not drive because he does not have a car.  (R. 37-38).  He is able to cook "simple meals" like grilled cheese, and he also cooks things in the microwave.  (R. 38).  He does laundry, and he goes shopping by himself once a week.  He plays video games and reads the instructions for the video games.  (R. 124).  He goes to a card shop to engage in card games, and volunteers at the library to help older patrons to use the internet.  (R. 125). This evidence provides substantial support for the ALJ's conclusion that Dr. Handel's "marked" limitations as to even simple tasks and daily activities are inconsistent with plaintiff's and his mother's testimony regarding his activities.[3, 4, 5]

---

[3]  The ALJ's RFC determination includes a limitation to simple instructions and tasks, and  is not inconsistent with Dr. Handel's opinion that plaintiff suffers "extreme" limitations in his ability to understand, remember, and carry out complex tasks.

[4]  Dr. Handel rated plaintiff's level of impairment as "moderate" in the areas of "ability to interact appropriately with the general public," "ability to get along with co-workers or peers," "constriction of interests," "ability to respond to customary work pressures," "ability to respond appropriately to supervision," and "degree of deterioration of personal habits." (R. 193-94). Dr. Handel's ratings in these areas are consistent with the ALJ's finding that plaintiff suffers from "moderate" limitations in social functioning, despite the fact that Dr. Handel estimated that plaintiff has a "marked" limitation in his ability to ask simple questions or request assistance.  (R. 20, 173, 193).

[5]  Plaintiff's mother testified that plaintiff was frustrated with his stocker job because he could not perform tasks at the speed his employer wanted, that she has to remind him to perform household tasks, that no one will hire him because he does not have a graduation diploma, that he gets along with people "for the most part" but that she thinks the reason he doesn't have many friends is that "he cannot keep up his end of the conversation to make it pleasant," and that she is "a little tired of telling him that he needs to brush his teeth and he needs to use soap and shampoo and, you know, daily things, everyday normal things that everybody else knows already." (R. 41-44).

The largest difference between the ALJ's conclusions and Dr. Handel's responses on the questionnaire is in the area of "concentration, persistence or pace." In the functions relating to this area, Dr. Handel generally rated plaintiff's limitations as "marked," (*i.e.*, as seriously interfering with the plaintiff's ability to function ) – and, as to complex instructions, "extreme" –  while the ALJ rated plaintiff's overall limitation in this area as "moderate." (See responses to ## 7, 8, 9, 10, 12, 13 on the questionnaire, R. 193-94; R. 20-21).  As noted above, regarding "simple" instructions and tasks, Dr. Handel's responses are inconsistent with the plaintiff's and his mother's descriptions of his abilities.  See Leiter v. Astrue, 2010 WL 1794177, *3-4 (11th Cir. May 6, 2010)("[T]he ALJ is not required to give a treating physician's opinion considerable weight if the claimant's own testimony regarding [his] daily activities contradicts that opinion.")(citation omitted).  Regarding complex instructions, the ALJ's determination of "moderate" impairment translated to an RFC which limits plaintiff to simple instructions and tasks and, thus, does not conflict with Dr. Handel's rating.  See n. 3, *supra*.  One of the ALJ's reasons for giving Dr. Handel's opinion "less weight" is that it conflicts with the records of plaintiff's functioning over a five-year span.  The ALJ noted that there is "no question that the claimant is restricted in his ability to concentrate." She further observed, however, that claimant reported improvement in his ability to concentrate when he is on medication to treat ADHD. (R. 20). While the plaintiff had previously discontinued medication for financial reasons, he testified at the hearing that he had been taking Strattera, prescribed by Dr. Handel, for two months and that it helps his concentration "a little."  (R. 36).  Plaintiff's mother also testified that the medication is helping him to the

extent that he is able to perform a two-step task.  (R. 43).  As noted above, when Dr. Shakir Meghani treated plaintiff on referral from Wiregrass Rehabilitation Center, he prescribed Concerta for plaintiff's ADD; at a follow-up appointment, plaintiff's mother reported that "he follows, instructions, remembers to follow instructions, and there is a definite improvement.  He is working now at SEAMC, janitorial work, and he is doing fairly good with that." (R. 152).

Additionally, plaintiff's employment counselor at Wiregrass Rehabilitation Center noted in July 2003 that, after plaintiff's physician had placed him on medication,  plaintiff's mother reported improvement and, also, that plaintiff showed progress with his training in the Employee Development Program.  She wrote that plaintiff "was able to follow instructions and perform tasks correctly."  (R. 153-54).  To the extent that Dr. Handel's questionnaire responses impose more than moderate limitations of concentration, persistence and pace, the records cited by the ALJ (R. 20-21) provide substantial evidence to support the ALJ's conclusion that Dr. Handel's restrictions are inconsistent with other evidence spanning a five-year period.

The ALJ articulated her reasons for giving Dr. Handel's opinion "less weight" than that assigned to the opinions of consultative examiners and a non-examining state agency physician.  These reasons are supported by substantial evidence and demonstrate good cause for rejecting Dr. Handel's opinion, to the extent that his opinion equates to more than moderate limitations in the four functional areas of mental functioning rated by the ALJ.  Accordingly, the ALJ's consideration of Dr. Handel's opinion does not constitute reversible

error.[6]

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and proper application of the law and, accordingly, that it is due to be affirmed. A separate judgment will be entered.

Done, this 17th day of May, 2010.

---

[6] The plaintiff argues that Dr. Handel's opinion "find[s] support in the opinions of both Dr. Jordan and Dr. Cline," and in plaintiff's past work history. Plaintiff points to, *inter alia*, Dr. Cline's statement in a March 2002 evaluation – when plaintiff was eighteen years old – that "if [plaintiff] is to be successful in the work place, he is going to need help with social skills," that he "remembered two of three words after a delay but could not make change from $18" and that he "does have difficulty concentrating." (Doc. # 13, pp. 6-7, 8; Exhibit 1F, Report of March 26, 2002 evaluation by Dr. Cline). The court notes, again, that the ALJ found plaintiff to have moderate limitations in concentration, persistence, and pace and to be limited to "short and simple instructions" and "simple tasks." (R. 18-21). Additionally, the ALJ found plaintiff to have moderate limitations in social functioning, and the RFC determination reflected these limitations. (Id.). Further, the record reflects that the plaintiff did, after Dr. Cline's evaluation, receive assistance with social skills. He entered the Wiregrass Rehabilitation Center's Employee Development Program a few weeks after Dr. Cline's evaluation; the goals established for him included "[developing] skills for effective communication and interaction with co-workers and supervisors." The report of plaintiff's employment counselor reflects that this goal was "completed," and that "[h]is grooming improved as did his interaction skills." (Exhibit 3F, p. 153).

The plaintiff also cites Dr. Jordan's opinion that the plaintiff "has evident problems with Attention Deficit Disorder and very possibly something along the line of Asperger's or even now more of a personality disorder" and argues that Dr. Jordan's opinion "lends support to Dr. Handel's finding of autism, as Asperger's syndrome is an autism spectrum disorder." (Doc. # 13, p. 8; Exhibit 4F, p. 156). Although the ALJ was not fully convinced of the diagnosis of autism, she nevertheless accepted it and found "autistic disorder" to be one of plaintiff's severe impairments. (R. 16-17). She found, as a result, that plaintiff has "moderate difficulties with social functioning." (R. 19). The court does not here address all of the evidence cited by the plaintiff because – upon consideration of the entire record, including the evidence on which the plaintiff relies – the court nevertheless concludes that the ALJ's stated reasons for giving Dr. Handel's opinion "less weight" are supported by substantial evidence and demonstrate good cause. It does not matter, for purposes of this court's review, that the record could also have supported a decision to accord Dr. Handel's opinion more weight. See Tagle v. Astrue, 279 Fed. Appx. 827, 828 (11th Cir. 2008)("We do not reweigh evidence or substitute our judgment for that of the Commissioner, but instead review the entire record to determine if the decision reached is reasonable and supported by substantial evidence.")(citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir.1991)).

13

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE